IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:25cr114 |
| | ) |
| RAYKWAN JERMAN BRANCH, | ) |
| *Defendant.* | ) |

### MR. BRANCH'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS EVIDENCE

Raykwan Branch, through counsel, replies as follows to the government's response, ECF No. 17, to his motion to suppress evidence, ECF No. 14:

**I.     Mr. Branch has standing to challenge his seizure and the search of the car.**

The government's primary argument against Mr. Branch's motion to suppress is that passengers of parked cars do not "have standing to challenge the seizure of a parked vehicle simply because they are seated in that vehicle." ECF No. 17 at 5. This Court has already considered and rejected the government's argument on this point in *United States v. Avagyan*, 164 F. Supp. 3d 864 (E.D.V.A. 2016), aff'd sub nom *United States v. Ghazaryan*, 685 F. App'x 222 (4th Cir. Apr. 18, 2017).

In *Avagyan*, the police got a tip from a bank security employee that three men were seen making repeated trips between two banks and a particular car parked at a nearby shopping center. 164 F. Supp. 3d at 871. The bank security employee found this activity to be suspicious because it did not comport with typical bank customer activity. *Id.* The bank security employee further provided the police with a description of the car and its license plate number. *Id.* An officer went over to the car at the shopping center and interacted with two people in the car. *Id.* The police officer asked the people in the car if he could open the car's door, and the people inside the car

assented. *Id.* at 872. Before the officer could open the door, the car door slid open (presumably when one of the people inside the car hit a button causing such action). *Id.* Once the car door was opened, the officer saw in plain view what appeared to be evidence of a credit card skimming scheme, which the police officer then took. *Id.*

Once charged in this Court with offenses related to credit-card skimming, the car's occupants challenged the legality of the search of the car. The car had been reported stolen, and the Court found that no credible evidence existed that the occupants of the car had permission from the car's owner to be in the car. *Id.* at 876-77. The government argued, as it does here, that while *Brendlin v. California*, 551 U.S. 249 (2007), found that car passengers have standing to challenge the legality of a police seizure during a traffic stop, *Brendlin* did not "confer an expectation of privacy in a stopped vehicle on a passenger in that vehicle". *Avagyan*, 164 F. Supp. 3d at 878.

This Court made several important findings here in response. First, the Court observed that "in *Rakas* [*v. Illinois*, 439 U.S. 128 (1978)], [*United States v.*] *Wellons*, [32 F.3d 117 (4th Cir. 1994),] and [*United States v.* ]*Hargrove*, [647 F.2d 411 (4th Cir. 1981),] the Supreme Court and the Fourth Circuit have acknowledged that non-owners have a right to challenge the legality of their own detention, stemming from their own interest in not being stopped (rather than any interest in the vehicle)." *Avagyan*, 164 F. Supp. 3d at 878. Second, "[b]ecause *Brendlin* did not revolutionize the field of non-owner, non-driver standing, the Court may safely look to older decisions on non-owner, non-driver standing to determine the scope of a non-owner, non-driver's standing". 164 F. Supp. 3d at 878. Then, quoting *United States v. Mayes*, 103 F. App'x 494 (4th Cir. 2004), this Court observed that a "passenger in a vehicle that is stopped ordinarily lacks standing to challenge a search of the vehicle, but he does have standing to challenge the legality

2

of his own detention and, if the detention is illegal, to seek suppression of items found during the vehicle search". 164 F. Supp. 3d at 878.

The Court then summarized: "*Brendlin* stands for the proposition that a person in a vehicle is always stopped when the vehicle in which he is travelling is stopped. *Mayes* stands for the proposition that being stopped gives the passenger standing to challenge the stop of his own person and, as in *Rakas*, any items in the car in which he might have a legitimate and legitimate expectation of privacy". 164 F. Supp. 3d at 879. These conclusions, which the Court described as a "synthesized rule", "rooted a passenger's standing to challenge the stop of a car in that passenger's interest in his person rather than the passenger's (non-existent) possessory interest in the car." *Id.* at 880.

That synthesized rule applies in full force here. Mr. Branch was a passenger in a car that was not stolen. The government bears the burden of producing evidence to show that the car was possessed without the owner's permission. *See, e.g.*, *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992). Then, as further explained below, the police officers illegally seized Mr. Branch. During that illegal seizure, Mr. Branch was sitting on the gun charged in this case, which pursuant to *Mayes* and *Rakas*, he had a reasonable expectation of privacy in. Thus, Mr. Branch has standing to challenge the police's seizure of his person and the search of the car, which revealed the gun.

**II.     The police seized Mr. Branch by surrounding the car, turning the car off and taking the keys, ordering Mr. Branch out of the car, and opening the car's door without permission.**

An encounter with the police triggers Fourth Amendment scrutiny when the officer, "'by means of physical force or show of authority, has in some way restrained the liberty of a citizen,'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). An individual is seized if "'in view of all of the circumstances surrounding the incident, a

reasonable person would have believed that he was not free to leave,'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "A police officer cannot legally detain a person simply because criminal activity is afoot. The particular person that is stopped must be suspected of criminal activity." *United States v. Fisher*, 597 F.3d 1156, 1158-59 (10th Cir. 2010) (citing *United States v. Goodrich*, 450 F.3d 552, 560 (3rd Cir. 2006)).

Numerous courts have held that when a police officer asserts control over the door or window of a car, a seizure under the Fourth Amendment has occurred. *See*, *e.g.*, *United States v. Morgan*, 71 F.4th 540, 545 (6th Cir. 2023) (finding seizure when officer opened car's door to check on car's driver); *United States v. Ngumezi*, 980 F.3d 1285, 1290 (9th Cir. 2020); *United States v. Brown*, 334 F.3d 1161, 1164 (D.C. Cir. 2003) (assuming that "that the opening of the car door constituted both a stop and a search for *Terry* purposes"); *United States v. Mestre*, 362 F.Supp.3d 1175, 1180 (M.D. Ala. 2019) ("The court finds that the seizure occurred the moment Officer Hughes opened the car door and began asking Defendants questions.").

Seizures also occur when the police surround a car and order the car's occupants to get out. For example, in *United States v. Hester*, four uniformed police officers approached two individuals in a parked car, instructed the driver to turn the car off, and ordered them to get out of the car. 910 F.3d 78, 82-83 (3rd Cir. 2018). The car was illegally parked in front of a corner store with a known history of drug-related activity, in a high-crime area, at around 11:40 p.m. *Id.* The driver admitted she did not have a driver's license and that the car was not registered in her name. *Id.* at 82. The *Hester* court concluded that in addition to the driver, the police seized the passenger by means of a show of authority because the passenger would not have "felt free 'to ignore the police presence and go about his business.'" *Id.* at 86 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

That is exactly what happened here. As Mr. Branch idly sat in the SUV, unaware his friend had been arrested, two polices officers—Officer Goins and Officer Burgess—surrounded the SUV. Officer Goins spoke with Mr. Branch as Officer Burgess peered into the car from the driver's door window. With a visual sweep of the SUV's interior, neither drugs nor guns could be seen. As Officer Goins told Mr. Branch to get out of the SUV, Officer Burgess reached into the car, turned off the engine, and took the keys. Officer Burgess then walked over to stand with Officer Goins at the passenger side door. A third officer came up to the driver's side and ordered Mr. Branch to get out of the car. Officer Goins then opened the front passenger door of the car and reached for Mr. Branch's arm. Because of the officer's actions, a person in Mr. Branch's position would not have felt free to leave. Thus, Mr. Branch was seized before the police found the gun Mr. Branch was sitting on.

### III.     The police did not have reasonable suspicion to justify seizing Mr. Branch.

The government in its opposition states that reasonable suspicion is a "commonsensical proposition . . . crediting the practical experience of officers who observe on a daily basis what transpires on the street." ECF No. 17 at 6 (quoting *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993)); *see also*, *Hester*, 910 F.3d at 87. The government's argument that the Richmond Police Department officers had reasonable suspicion justifying the seizure of Mr. Branch boils down to: 1) the Richmond police officers observed an SUV that was "new to the area;" 2) the area around the Mega Bodega is known for "hand-to-hand narcotics transactions;" and 3) that the driver of the SUV "was a wanted individual." ECF No. 17 at 6.

First, the Fourth Circuit has repeatedly "warned against the Government's proffering 'whatever facts are present, no matter how innocent, as indicia of suspicious activity,'" and also has been "deeply troubled by the way in which the Government attempts to spin . . . mundane acts

5

into a web of deception." *United States v. Massenburg*, 654 F.3d 480, 482 (4th Cir. 2011) (quoting *United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011)); *see United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013) ("At least four times in 2011, we admonished against the Government's misuse of innocent facts as indicia of suspicious activity."). The Fourth Circuit has held:

> "To determine if the officer had reasonable suspicion, courts look to the totality of the circumstances." *United States v. Foster*, 824 F.3d 84, 89 (4th Cir. 2016). "Seemingly innocent factors, when viewed together, can amount to reasonable suspicion." *Id.* But, "the presence of additional facts might dispel reasonable suspicion." *Kansas v. Glover*, __ U.S. __, 140 S. Ct. 1183, 1191 (2020). "We are skeptical of Government attempts to spin . . . largely mundane acts into a web of deception." *Foster*, 824 F.3d at 89. "Accordingly, the Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband." *Id.*

*United States v. Drakeford*, 992 F.3d 255, 263 (4th Cir. 2021).

The Court considers only the facts known to the officers at the time of the initial seizure in determining the legality of the seizure. *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018). "In assessing the constitutionality of such a stop, we ask whether, at the time of the seizure, the police officer had a 'reasonable suspicion' that the person seized was 'involved in criminal activity.'" *Id.*; *see also Robinson*, 846 F.3d at 698 (en banc) (a *Terry* stop "requires a reasonable suspicion that a crime or other infraction has been or is being committed"). "We assess the totality of the circumstances to determine if an objectively reasonable police officer would have had reasonable articulable suspicion that [the defendant] was committing a crime at the time the officers seized him." *Kehoe*, 893 F.3d at 238.

Here, the assertion that the SUV was "new to the area" of a commercial establishment is just such an innocent fact that the Fourth Circuit has cautioned against twisting into suspicious conduct. This seizure happened around the lunch hour, in broad daylight, outside of a store that sells food and other convenience store items, and during business hours. The shop is just a short

6

distance off of Hull Street—a major thoroughfare through Richmond. Under those circumstances, being "new to the area" is not at all evidence of criminal activity.

Second, as to the "high-crime area" factor the government argues, the Fourth Circuit has repeatedly made clear that the fact that a warrantless stop takes place in a high-crime area, while not irrelevant, is of limited utility in a reasonable suspicion analysis. In *Massenburg*, the Fourth Circuit stated that the fact that the *Terry* stop at issue "occurred in a high-crime area" did "little to create particularized suspicion." 654 F.3d 480, 486 (4th Cir. 2011). Similarly, in *United States v. Slocumb*, the Fourth Circuit noted that the fact that the stop was in a high-crime area—and in fact in the parking lot of a closed business late at night—while relevant, "do little to support the claimed particularized suspicion as to Slocumb." 804 F.3d 677, 682 (4th Cir. 2015).

The Supreme Court has noted the same. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). In *Massenburg*, the Fourth Circuit held that the high-crime nature of the area even combined with a 911 call about gunfire nearby "does not provide an additional reasonable basis for suspicion of particular individuals[.]" 654 F.3d at 488. "To hold otherwise would be to authorize general searches of persons on the street not unlike those conducted of old by the crown against the colonists." *Id.*

There was no evidence here that Mr. Branch or the driver of the SUV were engaged in any criminal activity the day that the police seized Mr. Branch. Mr. Branch was a passenger in an SUV legally parked in the parking lot of a Mega Bodega in the south-side of Richmond. Mr. Branch's encounter with the police began at 12:00 p.m. on a clear, sunny day in April. Mr. Branch was not "suspected of criminal activity;" he was sitting in a car, smoking a cigarette, using his cell phone.

7

*Fisher*, 597 F.3d at 1158-59. No one outside the SUV's passengers had approached or left the car. The car was simply parked in a parking lot at a store open to the public. Thus, no evidence about the SUV or its passengers indicated that at the time of Mr. Branch's seizure that Mr. Branch or the SUV was involved in any criminal activity. *Compare United States v. Lender*, 985 F.2d 151, 153-54 (4th Cir. 1993) (finding reasonable suspicion where officers were patrolling a high-crime area, it was late at night, defendant appeared to be conducting a drug transaction, and defendant attempted to evade the police).

And third, that the driver of the SUV had an outstanding warrant for a robbery alleged to have happened three months earlier more than seventeen miles away and involving a different car makes no difference here. Reasonable, articulable suspicion must be particularized to the person seized, not his associates. *See, e.g.*, *United States v. Cortez*, 449 U.S. 411, 417-18 (1981) ("Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."). Thus, the police officers did not have reasonable, articulable suspicion to seize Mr. Branch here. The subsequent search was thus illegal.

## CONCLUSION

As set forth above and in ECF No. 14, Mr. Branch has standing to challenge his illegal seizure and the subsequent search of his person and the car he was in when the police seized him. Because the police officers' seizure and subsequent search violated Mr. Branch's Fourth Amendment's protection against unreasonable searches and seizures, the Court must suppress the gun and suspected drugs found in this case as well as any other fruits flowing from the poisonous tree.

Respectfully Submitted,
RAYKWAN JERMAN BRANCH

By:         /s/
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org